No. 23-2164

In The
United States Court Of Appeals
For The 4th Circuit

Siddhanth Sharma

Plaintiff-Appellant

v.

Alan Hirsch, et. al

Defendant-Appellees

On Appeal From A Final Judgment Of The United States District Court For The
Eastern District Of North Carolina
Case No. 5:23-CV-506-M-BM, The Honorable Chief Judge Richard E. Myers II

**Opening Brief For Appellant Sharma**

Siddhanth Sharma

*pro se*

P.O. Box 937

Morrisville, NC, 27560

Telephone: 919-880-3394

E-Mail: Siddhanthsharma1996@yahoo.com

**\*\*Pursuant to Local Rule 26.1 and FRAP 26.1 Petitioner is an individual and does
not own any corporation\*\***

i

## **TABLE OF CONTENTS**

Intro                                                                                    **pg. 1**

Jurisdiction                                                                       **pg. 1**

Constitutional Provisions                                                **pg. 1**

Issues Presented For Review                                          **pg. 2**

Facts/History                                                                   **pg. 3**

1.A) DID THE DISTRICT COURT ERR IN HOLDING THAT APPELLANT'S
CLAIMS REGARDING THE REGISTERED VOTER AND THE 90-DAY
AFFILIATION REQUIREMENT WERE NOT RIPE, WHEN IT RULED ON THE
MERITS OF A SEPARATE CLAIM FINDING RIPENESS REGARDING THE
FELONY DISCLOSURE REQUIREMENT AND ALSO RULE THAT ALL
CLAIMS PRESENTED WERE PURELY LEGAL?                        **pg. 4**

B.) THE SIDE-ISSUE OF APPELLANT BEING DENIED TO BE A
REGISTERED VOTER ON ACCOUNT OF BEING AN ACTIVE FELON HAS
STILL NOT BEEN RESOLVED                                              **pg. 13**

2.) DID THE DISTRICT COURT ERR IN DENYING APPELLANT'S FELONY
DISCLOSURE ARGUMENT WHEN APPELLEES PRODUCED NO

EVIDENCE OF THE SUBSTANITALITY OF THE GOVERNMENT'S

INTEREST REGARDING NCGS 163-106(e)?                    **pg. 16**

B.) THE DISCLOSURE SERVES TO HARM APPELLANT'S REPUTATION

AND CHILLS APPELLANT'S 1st, 14th AMENDMENT RIGHTS      **pg. 24**

3.) DID THE DISTRICT COURT ERR IN DETERMINING THAT THE NCGS

163-107.1 WAS REASONABLE AS TO CANDIDATES FOR FEDERAL

OFFICE FOR MAJOR POLITICAL PARTIES?                    **pg. 27**

4.) DOES REVEALING APPELLANT'S RESIDENTIAL ADDRESS CHILLS

APPELLANT'S 1st, 14th AMENDMENT TO SEEK FEDERAL OFFICE  **pg. 33**

RELIEF/CONCLUSION                                      **pg. 39**

CERTIFICATE OF SERVICE/COMPLIANCE                      **pg. 40**

# CASE LAW/TABLE OF AUTHORITIES[1]

*American Constitutional Law Found. v. Meyer*, 120 F.3d 1092, 1100 (10th Cir. 1997)      pg. 10, 33, 37

*Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021)    pg. 21, 33

*Anderson v. Celebrezze*, 460 U.S. 780 (1983)      pg. 11, 17, 19, 20, 21, 23, 27, 29, 30, 32

*Anderson v. Martin*, 375 U.S. 399 (1964)      pg. 21, 23, 25

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)

*Bates v. Little Rock*, 361 U.S. 516      pg. 20, 37, 38

*Blount v. SEC*, 61 F.3d 938, 943      pg. 11, 12, 27, 29, 31, 34, 36

*Brown v. North Carolina State Board of Elections*, 394 F. Supp. 359 (W.D.N.C. 1975)      pg. 30

*Buckley v. American Constitutional Law Foundation, Inc.* 525 U.S. 182, 194-95 (1999)      pg. 10, 11, 33, 37

*Buckley v. Valeo*, 424 U.S. 1, 64 (1976)      pg. 11, 17, 19, 20, 21, 26, 29, 33, 37,

---

[1] Some cases, that are cited in the table of contents are not in the brief – and therefore have a blank number. These cases were cited in the lower courts and Appellant has attached them to the point this Court deems it necessary to review them.

38

*Bullock v. Carter*, 405 U.S. 134, 145 (1972)     pg. 29, 30

*Cook v. Gralike*, 531 U.S. 510 (2001)     pg. 12, 16, 18, 26, 27, 28,

*Cooksey v. Futrell*, 721 F.3d 226 (4th Cir. 2013)     pg. 4, 5, 6, 7, 9, 10, 24, 38

*Fairfax v. CBS Corp.* , 2 F.4th 286, 296 (4th Cir. 2021)     pg. 16

*Grant v. Meyer*, 828 F.2d 1446 (10th Cir. 1987)     pg. 10

*Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993)     pg. 11, 17, 21, 22, 33, 36, 37, 38

*Kenny v. Wilson*, 885 F.3d 280, 287-88 (4th Cir. 2018)     pg. 6, 10

*Master Printers of Am. v. Donovan*, 751 F.2d 700, 704 (4th Cir. 1984)

    pg. 17, 22, 23, 24, 33, 38

*Meese v. Keene*, 481 U.S. 465, 488 (1987)     pg. 24, 26

*Meyer v. Grant*, 486 U.S. 414 (1988)     pg. 10

*N.A.A.C.P. v. Alabama*, 357 U.S. 449, 462     pg. 20, 37, 38

*Plante v. Gonzalez*, 575 F.2d at 1127     pg. 19, 20, 21

*Socialist Workers Party v. Hechler*, 890 F.2d 1303 (4th Cir. 1989)

    pg. 20

*State v. House*, 295 N.C. 189, 203, 244 S.E.2d 654, 662 (1978) pg. 13, 14

*Talley v. California*, 362 U.S. 60, 66 (1960)           pg. 33, 35, 37, 38

*United States Term Limits v. Thornton*, 514 U.S. 779 (1995)   pg. 12, 16, 18, 25,

pg. 27, 28

*Wild Va. v. Council on Envtl. Quality*, 56 F.4th 281, 294 n. 4 (4th Cir. 2022)

pg. 5, 9

### STATUTES/RULES

**U.S. CONSTITUTION**

Article I Section 2 Clause 2     pg. 2, 11, 12, 18, 28

Article I Section 4 Clause 1     pg. 2

Article I Section 5 Clause 1     pg. 2

Article VI Clause 2              pg. 2

1st Amendment                    pg. 2, 3, 17, 22, 23 24, 33, 34, 35, 36, 38

5th Amendment                    pg. 2

14th Amendment                   pg. 2, 3, 17, 22, 23 24, 33, 34, 35, 36, 38

**NC CONSTITUTION**

Article VI, Section 2 Clause 3 pg. 1

 Article VI Section 8           pg. 1

**FRAP**

FRAP 44

**Federal Statute**:

28USC1292

**NC General Statute:**

NCGS 163-82.10(c)          pg. 1, 33, 34, 35, 36, 37, 38

NCGS 163-85                pg. 13, 14, 15

NCGS 163-86                pg. 13, 14, 15

NCGS 163-106               pg. 1, 2, 6, 7, 8, 9, 16, 17, 18, 19, 20, 21, 22, 23,
                           24, 25, 26, 36

NCGS 163-106.1             pg. 1, 6, 7, 8, 9, 10, 11, 12

NCGS 163-106.5             pg. 1, 3, 6, 7, 8, 9, 10, 11, 12,

NCGS 163-107               pg. 1, 2, 27, 28, 29, 30, 31, 32, 36

NCGS 163-107.1             pg. 1, 2, 27, 28, 29, 30, 31, 32, 36

NCGS 132-1                 pg. 25, 34, 35, 36, 37, 38, 39

## EXHIBITS

- District Court's Final Judgment

- Appellant's Complaint for Declaratory Relief

- Appellant's Request for Injunction

- Appellees' Answer to Complaint/Injunction

- Appellant's Response to Complaint

United States Court of Appeals
4th Circuit
*From Eastern District of North Carolina*
[5:23-CV-506-M-BM]

No. 23-2164

| Siddhanth Sharma | Opening Brief |
|---|---|
| Vs. | FRAP 5, 44 |
| Alan Hirsch, et. al | Local Rule 28 |

## INTRODUCTION

This appeal arises from a final judgment of the District Court regarding a Ballot-Access Denial against Appellant to run for U.S. House of Representatives for the 13th District of North Carolina.

## JURISDICTION

The District Court retained jurisdiction pursuant to 42USC1983. This Court retains jurisdiction pursuant to 28USC1292, FRAP 3, 4, 44. The District Court entered it Interlocutory Order on 28th September 2023. Appellant filed a notice of Appeal on 3rd October 2023. Plaintiff has also filed a Partial Reconsideration requesting the District Court for permission to Appeal on 3rd October 2023.

## CONSTITUTIONAL PROVISIONS, STATUTES, ETC. INVOLVED

Pursuant to FRCP 5.1 Plaintiff is questioning the statutes NCGS 13-1, NCGS 163-55, 82.1(c)(2), 82.4, 82.10(c), 96, 106(a), 106(b), 106(e), 106.1, 106.2, 106.5(a) 106.5(b), 107, 107.1, 127.3 et seq, 275, and Article 6 Section 2 and 8 of the NC Constitution [9C-10C, 15C-31C, 33C-34C, 38C-42C] as they violate The

1

1  1st, 14th, Amendment of the U.S. Constitution, Article I Section 2 Clause 2,

2  Article I Section 4 Clause 1, Article I Section 5 Clause 1, Article VI Clause 2 of

3  the U.S. Constitution [2C-8C] - only pertaining to running for U.S. House of

4  Representatives.

5                    **ISSUES PRESENTED FOR REVIEW**

6    1.) DID THE DISTRICT COURT ERR IN HOLDING THAT APPELLANT'S

7      CLAIMS REGARDING THE REGISTERED VOTER AND THE 90-DAY

8      AFFILIATION REQUIREMENT WERE NOT RIPE, WHEN IT RULED ON

9     THE MERITS OF A SEPARATE CLAIM FINDING RIPENESS REGARDING

10    THE FELONY DISCLOSURE REQUIREMENT AND ALSO RULING THAT

11           ALL CLAIMS PRESENTED WERE PURELY LEGAL?

12   2.) DID THE DISTRICT COURT ERR IN DENYING APPELLANT'S FELONY

13       DISCLOSURE ARGUMENT WHEN APPELLEES PRODUCED NO

14      EVIDENCE OF THE SUBSTANITALITY OF THE GOVERNMENT'S

15           INTEREST REGARDING NCGS 163-106(e)?

16   3.) DID THE DISTRICT COURT ERR IN DETERMINING THAT THE NCGS

17      163-107.1 WAS REASONABLE AS TO CANDIDATES FOR FEDERAL

18          OFFICE FOR MAJOR POLITICAL PARTIES?

19     4.) REVEALING APPELLANT'S RESIDENTIAL ADDRESS CHILLS

20      APPELLANT'S 1st, 14th AMENDMENT TO SEEK FEDERAL OFFICE

1  **FACTS/HISTORY**

2  • Appellant is running for U.S. House of Representatives for District 13 of

3  North Carolina as a Republican for the primary ballot[1].

4  • Appellant is indigent.

5  • The Candidacy Filing period begins 4th December – 15th December

6  2023[2].

7  • Appellant is an ex-felon who had his rights restored on 3rd September

8  2023 [10A].

9  • Upon being a Registered Voter on 5th September Appellant got denied

10  because he was still deemed an active felon [2A].

11  • Appellant filed a lawsuit on 14th September 2023 alleging 5 constitutional

12  violations that 1.) Appellees require a candidate to be a Registered Voter

13  2.) be affiliated with a political party for 90 days 3.) noncompliance of

14  the felony disclosure results in a ballot access denial 4.) the filing fee was

15  unconstitutional and 5.) Appellees revealing a candidate's residential

16  address chills the 1st amendment to exercise rights [JA29-74, JA75-116].

17  • Appellees conceded that those who do not meet the statutory provisions

18  will be denied ballot access via NCGS 163-106.5(b) [JA120-122][3].

---

[1] https://www.fec.gov/data/candidate/H4NC13108/
[2] https://www.ncsbe.gov/candidates/running-office
[3] Even the District Court conceded this fact as well [JA4, 11-12, 15-16].

1      • On 30th October 2023 the District Court denied Appellant's request for

2        an injunction for the same reasons it denied relief in the complaint [JA1-

3        28].

4      **1.) DID THE DISTRICT COURT ERR IN HOLDING THAT**

5  **APPELLANT'S CLAIMS REGARDING THE REGISTERED VOTER AND**

6  **THE 90-DAY AFFILIATION REQUIREMENT WERE NOT RIPE, WHEN**

7     **IT RULED ON THE MERITS OF A SEPARATE CLAIM FINDING**

8    **RIPENESS REGARDING THE FELONY DISCLOSURE REQUIREMENT**

9    **AND ALSO RULE THAT ALL CLAIMS PRESENTED WERE PURELY**

10                           **LEGAL?**

11  *Standard of Review*:

12      "We also review de novo a district court's dismissal for lack of standing and

13  ripeness." *Frank Krasner Enters. v. Montgomery Cnty.*, 401 F.3d 230, 234 (4th

14  Cir.2005); *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir.2006). See also *Cooksey v.*

15  *Futrell*, 721 F.3d 226, 234 (4th Cir. 2013).

16      "[Appellant] must demonstrate 'that [he] personally ha[s] suffered some

17  actual or threatened injury (citations omitted).'" *Cawthorn v. Amalfi*, 35 F.4th 245,

18  251 (4th Cir. 2022).

19      "We review a dismissal for lack of jurisdiction de novo." *Deal v. Mercer*

20  *Cnty. Bd. of Educ.*, 911 F.3d 183, 190 (4th Cir. 2018).

1        "Anticipated future injury can support standing, but only when it is

2  'certainly impending' or at least poses a 'substantial risk'—it must not be 'too

3  speculative' or 'rel[y] on a highly attenuated chain of possibilities (citations

4  omitted).'" *Wild Va. v. Council on Envtl. Quality*, 56 F.4th 281, 294 n. 4 (4th Cir.

5  2022).

6        "A case is fit for judicial decision when the issues are purely legal and when

7  the action in controversy is final and not dependent on future uncertainties." *Wild*

8  *Va. v. Council on Envtl. Quality*, 56 F.4th 281, 294.

9        "An allegation of future injury may suffice if the threatened injury is

10  certainly impending, or there is a substantial risk that the harm will occur." *Susan*

11  *B. Anthony List*, 573 U.S. at 158

12        The Fourth Circuit "-along with several other circuits-has held that' standing

13  requirements are somewhat relaxed in First Amendment cases,' particularly

14  regarding the injury in-fact requirement." *Davison v. Randall*, 912 F.3d 666,678

15  (4th Cir. 2019), as amended (Jan. 9, 2019) (quoting Cooksey v. Futrell, 721 F.3d

16  226,235 (4th Cir. 2013)). Here, Plaintiff alleges (1) he has a First Amendment right

17  to run for U.S. House of Representatives in District 13 of North Carolina for the

18  2024 Midterms, (2) a North Carolina statute permitting challenges to his candidacy

19  pursuant to an inapplicable section of the U.S. Constitution infringes on that right,

20  and  (3) he seeks declaratory and injunctive relief. Therefore, Plaintiff "must

1   establish an ongoing or future injury in fact." *Kenny v. Wilson*, 885 F.3d 280, 287-

2   88 (4th Cir. 2018) (citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)).

3       "In First Amendment cases, the injury-in-fact element is commonly satisfied

4   by a sufficient showing of "self-censorship, which occurs when a claimant is

5   chilled from exercising h[is] right to free expression." *Cooksey v. Futrell*, 721 F.3d

6   226, 235 (4th Cir. 2013). "Much like standing, ripeness requirements are also

7   relaxed in First Amendment cases. ("The primary reasons for relaxing the ripeness

8   analysis in th[e] [First Amendment] context is the chilling effect that potentially

9   unconstitutional burdens on free speech may occasion [.]"). Indeed, 'First

10  Amendment rights ... are particularly apt to be found ripe for immediate protection,

11  because of the fear of irretrievable loss. In a wide variety of settings, courts have

12  found First Amendment claims ripe, often commenting directly on the special need

13  to protect against any inhibiting chill.'" *Cooksey*, 721 F.3d at 240.

14  *Summary*:

15      The question for this Court is whether the District Court was correct in its

16  assessment of Ripeness. The District Court ruled that one of Appellant's claim,

17  Felony Disclosure under NCGS 163-106(e) [21C-22C], was ripe due to credible

18  threat of enforcement in the near future [JA17-23]. Yet the District Court found

19  that 2 of Appellant's claims were not yet ripe based on the application NCGS 163-

20  106.1, 106.5 [23C, 25C] of which would also be guaranteed to happen in the near

future [JA13-17]. Appellant believes the District Court's analysis on not finding

Ripeness, as to the Registered Voter and Party Affiliation claims, was error for the

fact that it found that all issues before it were legal [JA28]. It should be noted that

Appellees agreed that NCGS 163-106.1, 106.5(b) will deny ballot access for those

who do not comply [JA120-122].

*Argument*:

On the Candidacy Form [36C-37C] Sections 5 and 9 are codified into

General Statute, which require that in order to receive ballot access for U.S. House

of Representatives 1.) One must be a Registered Voter, NCGS 163-106.5 [25C],

and 2.) Affiliated with a Political Party for 90 Days, NCGS 163-106.1 [23C].

Appellees conceded this fact [JA120-122] as well as the District Court [JA4, 11-

12, 15-16]. Yet, the District Court ruled that Appellant's claim were not yet ripe as

to both issues because no board action had taken place. *See also* [JA13, 15, 16].

"Just as they argued [Appellant] has not been injured for standing purposes, they

also contend [Appellant's] claims are not ripe because the State Board has taken no

action against [Appellant]....we disagree." *Cooksey*, 721 F.3d at 240.

However, the District Court found ripeness, on a separate claim, and ruled

on Section 6 of the Candidacy Form [36C], which relates to Felony Disclosure,

which is codified into NCGS 163-106(e) [21C-22C]. *See* [JA17-23]. NCGS 163-

106(e) [21C-22C] says : "If the individual does not complete the statement at the

time of filing or within 48 hours after the notice, the individual's filing is not

complete, the individual's name shall not appear on the ballot as a candidate, and

votes for that individual shall not be counted." NCGS 163-106(e) also says that

anybody who does not attest as to whether they have a felony conviction will be

charged with a Class I Felony. *Id*. In either scenario whether Appellant, chooses to

untruthfully attest to his prior felony conviction or, just leaves the section blank :

results in a ballot access denial. The District Court found that this claim was ripe

because Appellant would sustain a future injury and that Appellees had not

disavowed that Appellant would be arrested [JA19][4]. Coming to the present issue

Appellees have not disavowed that Appellant would suffer a ballot access denial in

regard to NCGS 163-106.1, 106.5(b) [23C-25C] and even agreed that those who do

not follow the statutes will be denied ballot access [JA120-122]. Appellant

believes his claims regarding NCGS 163-106.1, 106.5(b) [23C-25C] are ripe. *See*

[JA45-53].

   To further show ripeness as to NCGS 163-106.1, 106.5(b) [23C-25C] it

should be noted that the questions before the District Court were purely legal, to

which the District Court agreed [JA28], and "A case is fit for judicial decision

---

[4] It is worth noting that in this part of the District Court's order it specifically mentioned Appellees "failed to raise any argument that Plaintiff's injury is not traceable to their conduct or redressable. See [D.E. 29 p. 9-11 (which translates to JA125-127)]." [JA125-127] regarded all of Appellant's assertions including Appellant's claim regarding NCGS 163-106.1, 106.5(b). If the District Court found ripeness, regarding NCGS 163-106(e) then it was error to not find ripeness regarding NCGS 163-106.1, 106.5(b).

8

1   when the issues are purely legal and when the action in controversy is final and not

2   dependent on future uncertainties." *Wild Va. v. Council on Envtl. Quality*, 56 F.4th

3   281, 294. Indeed, 'First Amendment rights ... are particularly apt to be found ripe

4   for immediate protection, because of the fear of irretrievable loss. In a wide variety

5   of settings, courts have found First Amendment claims ripe, often commenting

6   directly on the special need to protect against any inhibiting chill.'" *Cooksey*, 721

7   F.3d at 240. To bolster Appellant's claim that the Registered Voter and Affiliation

8   claims [JA45-53] were purely legal and ripe is because the District Court ruled on

9   the merits of the Felony Disclosure Issue [JA17-23], regarding NCGS 163-106(e)

10  [21C-22C], and did not find any future uncertainties as to that claim. NCGS 163-

11  106.1, 106.5(b) is no different in its application if one does not comply, therefore

12  inducing ripeness, which would evince a future injury that was not "speculative' or

13  'rel[y] on a highly attenuated chain of possibilities (citations omitted).'" *Wild Va.*

14  *v. Council on Envtl. Quality*, 56 F.4th 281, 294 n. 4 (4th Cir. 2022). It is for this

15  reason why Appellant believes his claims for challenging the Registered Voter

16  requirement [25C] and the 90 Day Affiliation Requirement [23C] are ripe because

17  if Appellant is not a Registered Voter, or chooses not to attest that he is a

1    Registered Voter[5], then he will be denied ballot access via NCGS 163-106.5(b)

2    [25C]; the same scenario applies for the 90 Day Affiliation requirement [23C].

3        The Fourth Circuit "-along with several other circuits-has held that' standing

4    requirements are somewhat relaxed in First Amendment cases,' particularly

5    regarding the injury in-fact requirement." *Davison v. Randall*, 912 F.3d 666,678

6    (4th Cir. 2019), as amended (Jan. 9, 2019) (quoting Cooksey v. Futrell, 721 F.3d

7    226,235 (4th Cir. 2013)). Here, Plaintiff alleges (1) he has a First Amendment right

8    to run for U.S. House of Representatives in District 13 of North Carolina for the

9    2024 Midterms, (2) a North Carolina statute permitting challenges to his candidacy

10    pursuant to an inapplicable section of the U.S. Constitution infringes on that right,

11    and (3) he seeks declaratory and injunctive relief. Therefore, Plaintiff "must

12    establish an ongoing or future injury in fact." *Kenny v. Wilson*, 885 F.3d 280, 287-

13    88 (4th Cir. 2018) (citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)).

14        For standing and ripeness, regarding NCGS 163-106.1, 106.5(b), Appellant

15    specifically relied on *Buckley v. American Constitutional Law Foundation, Inc.*

16    525 U.S. 182, 194-95 (1999); *Meyer v. Grant*, 486 U.S. 414 (1988); *Grant v.*

17    *Meyer*, 828 F.2d 1446 (10th Cir. 1987) *American Constitutional Law Found. v.*

---

[5] Since the District Court assumed Appellant would not file the Felony Disclosure truthfully, or at all, [JA20] it should have then determined that Appellant would not choose to attest to the requirement of Being a Registered Voter. Under this logic Appellant's claim as to the Registered Voter and Party Affiliation claims would be ripe; To avoid confusion that is precisely what Appellant's claim, regarding the Registered Voter and Affiliation requirement, was all about. The District Court was incorrect to assume Appellant was seeking to become a Registered Voter and Affiliated with a political party to comply with the requirements for ballot access, for if that was the case then Appellant wouldn't even be filing this lawsuit.

1    *Meyer*, 120 F.3d 1092, 1100 (10th Cir. 1997) and in all those cases the Courts

2    found that litigants had standing and ripeness, regarding their registered voter

3    requirements – Appellant's case is no different. Since Appellant is seeking office

4    for U.S. House of Representatives these statutes serve to act as additional

5    qualifications than what is mandated in Article 1 Section 2 Clause 2 of the U.S.

6    Constitution and Strict Scrutiny applies. See *Anderson v. Celebrezze*. 460 U.S. 780

7    (1983); *Buckley v. Valeo*, 424 U.S. 1, 64-65 (1976).

8          To determine whether a statute survives Strict Scrutiny there is a 3-Pronged

9    Test in *Blount v. SEC*, 61 F.3d 938, 943. (1) "the interests the government proffers

10   in support" of the statute must be "properly characterized as `compelling'"; (2) the

11   statute must "effectively advance[] those interests"; and (3) the statute must be

12   "narrowly tailored to advance the compelling interests asserted." *Blount v. SEC*, 61

13   F.3d 938, 943. Appellees have provided no support of a governmental interest

14   regarding NCGS 163-106.5(b) and NCGS 163-106.1 [23C-25C]. "[North

15   Carolina's NCGS 163-106.1, 106.5(b)] conditions the right to [run for Congress]

16   on the consent to [be a Registered Voter and Affiliated with a Political Party for 90

17   days]." *Greidinger v. Davis*, 988 F.2d 1344, 1352 (4th Cir. 1993). For these

18   reasons Appellees cannot satisfy the 1st prong of *Blount*. *See* [JA120-122].

19   Subsequently Appellees cannot satisfy the 2nd prong of *Blount* because there is no

11

1  State Interest[6] in requiring one to be a Registered Voter if one is to be the person

2  voted in nor is there any reason to make someone affiliated with a political party

3  for 90 days – **failure to meet either requirement results in a ballot access**

4  **denial.** Because there is no state interest NCGS 163-106.5(b) and NCGS 163-

5  106.1 serve as additional qualifications for Federal Office, and subsequently

6  Appellees cannot satisfy the 3rd Prong of *Blount*. As we made clear in U S. Term

7  Limits, "the Framers understood the Elections Clause as a grant of authority to

8  issue procedural regulations, and not as a source of power to dictate electoral

9  outcomes, to favor or disfavor a class of candidates, or to evade important

10  constitutional restraints." 514 U.S., at 833-834; see also *Cook v. Gralike*, 531 U.S.

11  510, 523 (2001).

12    Appellant would reverently request this Court to reverse the District Court

13  ruling regarding Ripeness as to NCGS 163-106.1, 106.5(b) [JA13-17] and remand

14  the issue of NCGS 163-106.5 [25C] and NCGS 163-106.1 [23C] as to whether

15  they are additional qualifications for U.S. House of Representatives than what is

16    mandated in Article 1 Section 2 Clause 2 of the U.S. Constitution.

---

[6] It is worth noting that Appellees provided no argument for this Appellant's claim regarding NCGS 163-106.1, 106.5(b). *See* [JA45-53]

1    **B.) THE SIDE-ISSUE OF APPELLANT BEING DENIED TO BE A**

2    **REGISTERED VOTER ON ACCOUNT OF BEING AN ACTIVE FELON**

3    **HAS STILL NOT BEEN RESOLVED**

4    *Standard of Review*:

5    "When a challenge is made, the county board of election **shall** schedule a

6    preliminary hearing on the challenge, and shall take such testimony under oath and

7    receive such other evidence proffered by the challenger as may be offered." NCGS

8    163-85(d) (emphasis added). "A challenge made under G.S. 163-85 **shall** be heard

9    and decided before the date of the next primary or election." NCGS 163-86(a)

10   (emphasis added).

11   "[O]rdinarily, the word 'must' and the word 'shall,' in a statute, are deemed

12   to indicate a legislative intent to make the provision of the statute mandatory[.]"

13   *State v. House*, 295 N.C. 189, 203, 244 S.E.2d 654, 662 (1978).

14   *Argument*:

15   Appellant had his voting rights restored on 3rd September 2023 [10A] and

16   when he sought to be a Registered Voter on the 5th of September 2023 he was

17   denied due to still being an Active Felon [2A]. This Notice Appellant received

18   qualifies as a Challenge pursuant to NCGS 163-85(c)(5),(d), 86 [43C-44C]. To this

19   day Appellant has not had his hearing. Subsequently NCGS 163-85(d) and NCGS

20   163-86 [43C-44C] should follow – however that has not happened yet. Appellant

13

presented this issue to the District Court [JA37, 43, 45, JA166, 173-174].

Appellees provided 2 Declarations [JA200-209] agreeing that there was a mistake.

The District Court, noting that this fact is one of the most critical issues of the case,

ultimately sided with Appellees and believed the declarations to be of weight

[JA173-174].      Appellant believes the District Court erred.

The primary reason Appellant believes the District Court erred is because

Appellees' declarations [JA200-209] are *de facto* because the proper procedure is

via NCGS 163-85(d), 86 [43C-44C]. The 4th paragraph of the Notice [2A] has to

be referring to NCGS 163-85(d) [43C]. "[O]rdinarily, the word 'must' and the

word 'shall,' in a statute, are deemed to indicate a legislative intent to make the

provision of the statute mandatory[.]" *State v. House*, 295 N.C. 189, 203, 244

S.E.2d 654, 662 (1978). Appellant sent a copy of his restoration of rights [10A] via

USPS to the NC Board of Elections and it was delivered on September 15th 2023

with the tracking number : 70222410000019753018 [JA166, 171, 173-174]; What

is true is that had Appellant not responded to this Notice [2A], he would have been

denied to be a Registered Voter automatically as said on the 3rd paragraph of the

Notice [2A][7]. Technically, Appellant's status as a Registered Voter is denied as he

has not yet had his Challenge Hearing pursuant to NCGS 163-85(d), 86 [43C-

---

[7] The Notice shows proof that Appellant is being challenged, via NCGS 163-85(d), and that Appellant was required to show proof that he was not an "Active Felon."

1  44C]. Appellant fails to see how a declaration has more weight than a State Statute

2  [43C-44C] – These declarations give no proper notice to Appellant that his

3  Challenge Status has been properly adjudicated as prescribed by law. Appellant

4  could receive a declaration from Governor Roy Cooper himself and it would still

5  have no legal weight : the proper process is NCGS 163-85, 86 [43C-44C] and this

6  mandatory hearing has not happened yet. This precedent, set by the District Court,

7  gives Appellees too much power where they can, at their discretion, challenge

8  voters and candidates "under the table" and not adjudicate those processes as

9  mandated by law [43C-44C].

10     Since the issue of being a Registered Voter is a requisite to run for Federal

11  Office [25C], at least in North Carolina, this denial of being a Registered Voter

12  [2A] would induce Appellant to have standing and ripeness as to the Registered

13  Voter claim since he has not been adjudicated pursuant to NCGS 163-85(d); Since

14  the Registered Voter claim is also intertwined with being Affiliated with a party for

15  90 days this would also induce Appellant to have standing/ripeness as to the

16  Affiliated Party Claim.

17     Appellant believes the District Court's ruling should be reversed as to

18     finding that Appellees' declarations were sufficient. [JA17].

19

20

1    **2.A) DID THE DISTRICT COURT ERR IN DENYING**

2    **APPELLANT'S FELONY DISCLOSURE ARGUMENT WHEN**

3    **APPELLEES PRODUCED NO EVIDENCE OF THE SUBSTANITALITY**

4    **OF THE GOVERNMENT'S INTEREST REGARDING NCGS 163-106(e)?**

5    *Standard of Review:*

6    "We review the [District] court's interpretation de novo" *Fairfax v. CBS*

7    *Corp.* , 2 F.4th 286, 296 (4th Cir. 2021).

8    As we made clear in U S. Term Limits, "the Framers understood the

9    Elections Clause as a grant of authority to issue procedural regulations, and not as

10   a source of power to dictate electoral outcomes, to favor or disfavor a class of

11   candidates, or to evade important constitutional restraints." 514 U.S., at 833-834;

12   see also *Cook v. Gralike*, 531 U.S. 510, 523 (2001).

13   "Disclosure laws that 'significant[ly] encroach' on first amendment rights

14   'cannot be justified by a mere showing of some legitimate governmental interest.'

15   Rather, the state's interests must survive 'exacting' scrutiny, and the state must

16   establish a 'relevant correlation' or 'substantial relation' between the governmental

17   interest and the information sought through disclosure. Exacting scrutiny is

18   required even if the infringement on first amendment rights arises 'not through

19   direct government action, but indirectly as an unintended but inevitable result of

16

1    the government's conduct in requiring disclosure.' *Buckley*, 424 U.S. at 64-65."

2    See also *Master Printers of Am. v. Donovan*, 751 F.2d 700, 704 (4th Cir. 1984).

3          There was a 3-Pronged Test in *Greidinger v. Davis*, 988 F.2d 1344, 1352

4    (4th Cir. 1993).To satisfy strict scrutiny, the government must establish three

5    elements: (1) "the interests the government proffers in support" of the statute must

6    be "properly characterized as `compelling'"; (2) the statute must "effectively

7    advance[] those interests"; and (3) the statute must be "narrowly tailored to

8    advance the compelling interests asserted." *Id.*

9    *Summary:*

10         The question before this Court is whether the applicability of NCGS 163-

11   106(e) [21C-22C] 1.) Adds an additional qualification for U.S. House of

12   Representatives for noncompliance 2.) chills Appellant's 1st, 14th Amendment

13   rights to seek office. Appellant believes the District Court was correct in finding

14   standing and ripeness but incorrect as to its conclusions of law regarding the merits

15   of the claim. Appellant believes the District Court had no basis to assume that

16   NCGS 163-106(e) is a substantial government interest when Appellees produced

17   no evidence in support, to which the District Court noted [JA19]. *See also* [JA20-

18   22]. Appellant believes Strict Scrutiny and Exacting Scrutiny apply. See *Anderson*

19   *v. Celebrezze.* 460 U.S. 780 (1983); *Buckley v. Valeo*, 424 U.S. 1, 64-65 (1976).

20   Appellant believes he made a sufficient argument to the District Court. *See* [JA54-

64]. This Court must note that Appellant's challenge to NCGS 163-106(e) is only as applied to qualifications for Federal Congress – this statute is fine for state office.

*Argument*:

Appellant is an ex-felon and NCGS 163-106(e) requires Appellant to attest as to whether he is a felon or not. NCGS 163-106(e) [21C-22C] says : "If the individual does not complete the statement at the time of filing or within 48 hours after the notice, the individual's filing is not complete, the individual's name shall not appear on the ballot as a candidate, and votes for that individual shall not be counted." NCGS 163-106(e) also says that anybody who does not attest as to whether one has a felony conviction will be charged with a Class I Felony. *Id*. It is for this reason why Appellant believes that noncompliance with NCGS 163-106(e) [21C-22C] adds an additional qualification for U.S. House of Representatives than what is mandated in Article 1 Section 2 Clause 2 of the U.S. Constitution. As we made clear in U S. Term Limits, "the Framers understood the Elections Clause as a grant of authority to issue procedural regulations, and not as a source of power to dictate electoral outcomes, to favor or **disfavor a class of candidates**, or to evade important constitutional restraints." 514 U.S., at 833-834; see also *Cook v. Gralike*, 531 U.S. 510, 523 (2001) (emphasis added). NCGS 163-106(e) specifically "disfavors a class of candidates". *U.S. Term Limits*, 514 U.S., at 833-834. NCGS

18

1    163-106(e) only targets those with felony records, to which Appellant is a class of.

2    Felons who chose not to attest to their prior felony records are denied ballot access

3    and can even be charged with a Class I felony.

4         Appellees assertion that NCGS 163-106(e) applies to "everyone" [JA141] is

5    meritless because, although everyone has to attest either "yes" or "no" [21C-22C],

6    the primary concern is that if one is a felon and chooses not to answer or answer

7    untruthfully it will result in a ballot access denial as the statute mandates and even

8    charge one with a Class I Felony. "We also find no merit in the State's claim that

9    [NCGS 163-106(e)] serves the interest of treating all candidates alike." *Anderson*

10   *v. Celebrezze*. 460 U.S. at 799. It is for this reason why Appellant believes Strict

11   Scrutiny applies. See *Anderson v. Celebrezze*. 460 U.S. 780 (1983); *Buckley v.*

12   *Valeo*, 424 U.S. 1, 64-65 (1976).

13        Appellees never offered any insight as to *why* NCGS 163-106(e) is a

14   substantial government interest but relied on, what Appellant believes is a broad

15   interpretation of, *Buckley v. Valeo*, 424 U.S. 1, 65, 68 (1976) that it "informs the

16   electorate to make wise decisions" [JA21-22] and also relied on *Plante v.*

17   *Gonzalez*, 575 F.2d at 1127. [JA141-143]. The District Court found that NCGS

18   163-106(e) [22C] was a "substantial government interest" [JA21] yet never

19   explained *what* this interest was, but relied also on *Buckley v. Valeo*, 424 U.S. 1,

20   65, 68 (1976) that it "informs the electorate to make wise decisions" [JA21-22] and

1  also relied on *Plante v. Gonzalez*, 575 F.2d at 1127. "Constitutional challenges to

2  specific provisions of a State's election laws therefore cannot be resolved by any

3  "litmus-paper test" that will separate valid from invalid restrictions..... It then must

4  identify and evaluate the precise interests put forward by the State as justifications

5  for the burden imposed by its rule. In passing judgment, the Court must not only

6  determine the legitimacy and strength of each of those interests, it also must

7  consider the extent to which those interests make it necessary to burden the

8  plaintiff's rights." *Anderson*, 460 U.S. at 789.

9      Appellant believes the District Court's reliance on *Buckley*, 424 U.S. 1, 65,

10  68 and *Plante*, 575 F.2d at 1127 is error as those cases are inapposite to

11  Appellant's scenario because noncompliance with NCGS 163-106(e) specifically

12  denies ballot access and even charges one with a Class I felony for

13  noncompliance[8], whereas the disclosures in *Buckley* and *Plante* do not deal with a

14  ballot access denial. Appellant believes the District Court's reasoning is precisely

15  what was condemned in *Anderson v. Celebrezze, 460 U.S. 780, 796-799 (1983)*.

16  "Our cases reflect a greater faith in the ability of individual voters to inform

17  themselves about campaign issues." *Anderson*, 460 U.S. at 797. Appellant cannot

18  see how revealing one's *past* Felony History informs the electorate to make wise

19  decisions [JA21-22] – Appellant believes it would make the voters vote on

---

[8] See *Bates v. Little Rock*, 361 U.S. 516 (1960) and *N.A.A.C.P. v. Alabama*, 357 U.S. 449, 462

1    prejudice in a 404(b)-type of manner[9]. See *Anderson v. Martin*, 375 U.S. 399

2    (1964). "It is also by no means self-evident that the interest in [informing voters] is

3    served at all by a requirement that requires an ex-felon to attest to his past felony

4    history.....A State's claim that it is enhancing the ability of its citizenry to make

5    wise decisions by [only allowing 'serious candidates' on the ballot] must be viewed

6    with some skepticism." *Anderson v. Celebrezze*, 780 U.S. at 798.

7        Because the State failed to show any reason as to *why* NCGS 163-106(e) is a

8    substantial government interest Appellant believes Appellees failed to satisfy Strict

9    Scrutiny and Exacting Scrutiny – it is for this reason as to why Appellant believes

10    the District Court's reasoning was wrong as well as the District Court had no basis

11    to assume a matter not produced in evidence. See *Ams. for Prosperity Found. v.*

12    *Bonta*, 141 S. Ct. 2373 (2021). Appellant believes the District Court allowed a

13    broad interpretation of the "State's Interest", based on *Buckley* and *Plante*, and

14    narrowly applied it to Appellant.

15        There was a 3-Pronged Test in *Greidinger v. Davis*, 988 F.2d 1344, 1352

16    (4th Cir. 1993).To satisfy strict scrutiny, the government must establish three

17    elements: (1) "the interests the government proffers in support" of the statute must

18    be "properly characterized as `compelling'"; (2) the statute must "effectively

19    advance[] those interests"; and (3) the statute must be "narrowly tailored to

---

[9] More of this will be discussed 2.B *infra*

1    advance the compelling interests asserted." *Id*. "A finding of a substantial 'chill' on

2    protected first amendment rights requires a showing that the statutory scheme will

3    result in threats, harassment, or reprisals to specific individuals." *Master Printers*

4    *of Am. v. Donovan*, 751 F.2d at 704. Due to Appellant's status as an ex-felon if he

5    does not comply, not only will he be denied ballot access, he will even be charged

6    with a Class I Felony, *see* NCGS 163-106(e) [21C-22C], and therefore satisfies the

7    "chill" of 1st Amendment rights. See *id*. "[North Carolina's felony disclosure]

8    scheme conditions the right to [run for Congress] on the consent to the public

9    disclosure of [Appellant's past felony record]." *Greidinger v. Davis*, 988 F.2d

10   1344, 1352 (4th Cir. 1993).

11        Appellees fail to satisfy the 1st Prong of *Greidinger*. Appellees are required

12   to state what substantial interest NCGS 163-106(e) [21C-22C] serves, this usually

13   includes legislative history of which they provided none. See *Master Printers of*

14   *Am. v. Donovan*, 751 F.2d at 706. Assuming *arguendo* that NCGS 163-106(e) is

15   intended to foster an informed electorate Appellant believes this to be unpersuasive

16   because it is hard to square how revealing one's *past* Felony History informs the

17   electorate to make wise decisions on political matters – Appellant believes

18   Appellees, and the District Court's, rationale would make the voters vote on

22

1    prejudice in a 404(b)-type of manner[10] and actually cause confusion from main

2    political issues. See *Anderson v. Martin*, 375 U.S. 399 (1964). *See also* [JA21-22,

3    JA141-143]. "It is also by no means self-evident that the interest in [informing

4    voters] is served at all by a requirement that requires an [ex-felon to attest to his

5    past felony history].....A State's claim that it is enhancing the ability of its citizenry

6    to make wise decisions by [only allowing 'serious candidates' on the ballot] must

7    be viewed with some skepticism." *Anderson v. Celebrezze*, 780 U.S. at 798.

8        Appellant believes Appellees cannot satisfy the 2nd Prong because they

9    failed to provide any legislative history and can therefore not show that NCGS

10   163-106(e) advances this government interest. See *Master Printers of Am. v.*

11   *Donovan*, 751 F.2d at 707-708. For all the reasons stated in Subsection b *supra*

12   Appellant cannot fathom how revealing Appellant's past felony conviction is

13   allowing the voters to make "informed decisions." Appellees fail to satisfy the 3rd

14   Prong because noncompliance with NCGS 163-106(e) will result in a ballot access

15   denial. There is no way the statute can be narrowly tailored because the statute is

16   pejorative in nature, at least as it pertains to qualifications for Federal Office.

17       Appellant believes a reversal of the District Court's determination as to

18   NCGS 163-106(e) is warranted [JA20-23]. Appellant must iterate that his

---

[10] NCGS 163-106(e) causes Appellant to be stigmatized by a past event in his life. It is no different than Appellees requiring a disclosure as to one's ethnicity, sex, origin, religion, etc. NCGS 163-106(e) becomes pejorative in nature. More of this will be discussed in Argument 2.B THE DISCLOSURE SERVES TO HARM APPELLANT'S REPUTATION AND CHILLS APPELLANT'S 1st, 14th AMENDMENT RIGHTS *infra*.

1  challenge to NCGS 163-106(e) is only applied to qualifications for U.S. House of

2  Representatives – it is perfectly fine for state office.

3  **B.) THE DISCLOSURE SERVES TO HARM APPELLANT'S**

4  **REPUTATION AND CHILLS APPELLANT'S 1st, 14th AMENDMENT**

5  **RIGHTS**

6  *Standard of Review*:

7      The Court has "long recognized that even regulations aimed at proper

8  governmental concerns can restrict unduly the exercise of rights protected by the

9  First Amendment (citations omitted)." *Meese v. Keene*, 481 U.S. 465, 488 (1987).

10  See also *Cooksey v. Futrell*, 721 F.3d 226, 235, 238 n.5 (4th Cir. 2013).

11  *Argument*:

12      On a separate note this Felony Disclosure also chills Appellant's 1st, 14th

13  Amendment rights as the intention of NCGS 163-106(e) [21C-22C] is pejorative in

14  nature and harms Appellant's reputation which induces voters to vote on prejudice,

15  based on past matters, in a 404(b)-type manner. For Appellees to display

16  Appellant's past felony convictions, via NCGS 163-106(e) [21C-22C] to the voters

17  is no different than scrutinizing Appellant due to his ethnicity, origin, sex, religion,

18  etc. Revealing Appellant's past conviction, via NCGS 163-106(e), seems to say

19  that because Appellant used to be a felon he is a wretched individual and once a

20  wretch always a wretch. The District Court relied on *Master Printers of Am. v.*

1   *Donovan*, 751 F.2d 700 (4th Cir. 1984) and primarily on NCGS 132-1 [43C] to

2   justify NCGS 163-106(e) being a substantial state interest. *See* [JA22].

3       The District court ruled that Appellant's felony record was already public

4   [JA22]. Appellant's felony convictions may be public record via NCGS 132-1 but

5   the voters would have to find that information by themselves whereas the State

6   Board of Elections (Appellees) presents the issue, via NCGS 163-106(e), for the

7   voters to see. While Appellant's criminal record is Public the ***construal*** of his

8   criminal record, via NCGS 163-106(e), is intended to allow voters to vote on

9   prejudice in a 404(b)-type manner. See *Anderson v. Martin*, 375 U.S. 399 (1964).

10  To use Appellant's criminal record against him is for opponents and voters to do

11  this on their own time, and not for the government (Appellees) to stigmatize

12  Appellant. To allow this precedent would set further precedent that Appellees can

13  require voters to know if Candidates are married, believe in God, etc. The State

14  (Appellees) can have no vital interest to reveal a candidate's prior felony history

15  but to show that he is of bad character. To bolster Appellant's claim

16  **noncompliance** with NCGS 163-106(e) results in a ballot access denial. "The fact

17  that the statute's practical effect may be to discourage protected speech is

18  sufficient to characterize [it] as an infringement on First Amendment activities."

19  *FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 255 (1986). As we

20  made clear in U S. Term Limits, "the Framers understood the Elections Clause as a

25

1   grant of authority to issue procedural regulations, and not as a source of power to

2   dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade

3   important constitutional restraints." 514 U.S., at 833-834; see also *Cook v. Gralike*,

4   531 U.S. 510, 523 (2001). It should be noted that the District Court's reliance on

5   *Buckley*, 424 U.S. at 64 (1976) dealt with a Federal Statute applied for Federal

6   Office and that it primarily dealt with ***ongoing*** matters; whereas NCGS 163-106(e)

7   is a state statute regulating federal office and is stigmatizing Appellant for a past

8   matter and allowing the voters to vote on prejudice in a 404(b)-type manner.

9   Noncompliance with NCGS 163-106(e) denies ballot access and indirectly adds an

10  additional qualification for U.S. House of Representatives.

11      *Meese v. Keene*, 481 U.S. 465, 488 (1987) is very similar. *Meese* was

12  reversed in favor of the government because the Supreme Court found the statute

13  in question was not pejorative, Appellant's situation is slightly different because

14  NCGS 163-106(e) [22C] serves to harm Appellant's character and is pejorative.

15      Appellant believes the District Court's ruling should be reversed [JA20-23].

16

17

18

1    **3.) DID THE DISTRICT COURT ERR IN DETERMINING THAT THE**

2    **NCGS 163-107.1 WAS REASONABLE AS TO CANDIDATES FOR**

3    **FEDERAL OFFICE FOR _MAJOR POLITICAL PARTIES_?**

4    *Standard of Review:*

5         As we made clear in U S. Term Limits, "the Framers understood the

6    Elections Clause as a grant of authority to issue procedural regulations, and not as

7    a source of power to dictate electoral outcomes, to favor or disfavor a class of

8    candidates, or to evade important constitutional restraints." 514 U.S., at 833-834;

9    see also *Cook v. Gralike*, 531 U.S. 510, 523 (2001).

10        The "strict scrutiny" test in *Anderson v. Celebrezze*, 460 U.S. 780, 789

11   (1983) applies. To satisfy strict scrutiny, the government must establish three

12   elements: (1) "the interests the government proffers in support" of the statute must

13   be "properly characterized as `compelling'"; (2) the statute must "effectively

14   advance[] those interests"; and (3) the statute must be "narrowly tailored to

15   advance the compelling interests asserted." *Blount v. SEC*, 61 F.3d 938, 943.

16   *Summary:*

17        Appellant believes the District Court erred in finding that NCGS 163-

18   107, 107.1 [38C-39C] was reasonable because all cases cited by the District Court

19   regarded the regulation of independent political parties as a whole and the

20   regulation of independent candidates for state office. *See* [JA23-25]. Appellant

27

1   must assert that he believes NCGS 163-107, 107.1 unconstitutional **as applied** for

2   Federal Office. The statute is perfectly fine for state office.

3   *Argument*:

4                   Appellant is running for U.S. House of Representatives as a

5   Republican, a major political party, for the primary ballot. Appellant is indigent.

6   Every citation the District Court relied on regarded 3rd party candidacies for state

7   office – the District Court even noted in a footnote that the cases it relied upon

8   were not identical. *See* [JA24]. Appellant believes all the cases relied upon by the

9   District Court are inapposite to Appellant's situation. Failure to comply with

10  NCGS 163-107, 107.1 [38C-39C] results in a ballot access denial. As we made

11  clear in U S. Term Limits, "the Framers understood the Elections Clause as a grant

12  of authority to issue procedural regulations, and not as a source of power to dictate

13  electoral outcomes, to favor or disfavor a class of candidates, or to evade important

14  constitutional restraints." 514 U.S., at 833-834; see also *Cook v. Gralike*, 531 U.S.

15  510, 523 (2001).

16                  Article 1 Section 2 Clause 2 of the U.S. Constitution mandates the

17  qualifications for Congress. If failure to comply with NCGS 163-107, 107.1 [38C-

18  39C] results in a ballot access denial Appellant cannot see how this scenario should

19  not be viewed under the same lens as *Cook v. Gralike*, 531 U.S. 510, 523 (2001).

20  Appellant must assert that he believes NCGS 163-107, 107.1 unconstitutional **as**

1    **applied** for Federal Office. The imposition of NCGS 163-107 comes down to how

2    much money one has in his/her wallet and the imposition of NCGS 163-107.1

3    comes at an unachievable feat now that maps have been enacted on 25th October

4    2023[11], leaving Appellant with only 25 days to meet the signature amount. *See*

5    NCGS 163-107.1(c) [39C].

6              Appellant believes Strict Scrutiny applies. See *Anderson v.*

7    *Celebrezze*. 460 U.S. 780 (1983); *Buckley v. Valeo*, 424 U.S. 1, 64-65 (1976);

8    *Blount v. SEC*, 61 F.3d 938, 943. Appellees position that NCGS 163-107, 107.1

9    serves a legitimate state interest is meritless because they offered no evidence as to

10   the rationality of the statute yet relied on case laws that only regarded 3rd party

11   candidates for state office or regulated an independent political party as a whole

12   [JA143-145]. "However, these general principles are not to be interpreted as an

13   open sesame for minor parties and individuals who want to appear on the ballot

14   with the major candidates." *Socialist Workers Party v. Hechler*, 890 F.2d 1303,

15   1304 (4th Cir. 1989). Appellant believes Appellees failed to satisfy strict scrutiny.

16   Appellees have an interest in maintaining ballots that do not "discourage voter

17   participation and confuse and frustrate those who do participate," and to promote

18   "ballots of reasonable size limited to serious candidates with some prospects of

19   public support" *Bullock*, 405 U.S. at 715. [JA144-145] but "A State's claim that it

---

[11] https://www.ncleg.gov/BillLookUp/2023/S757

1   is enhancing the ability of its citizenry to make wise decisions by [only allowing

2   'serious candidates' on the ballot] must be viewed with some skepticism."

3   *Anderson v. Celebrezze*, 780 U.S. at 798. It should be noted that *Bullock* only

4   relates to 3rd party candidacies for state office whereas Appellant seeks federal

5   office as a Republican, a major political party, for the primary ballot.

6         Appellant argued that since NCGS 163-107.1 [42C] was made in pursuit of

7   *Brown v. North Carolina State Board of Elections*, 394 F. Supp. 359 (W.D.N.C.

8   1975), to which Appellees conceded, NCGS 163-107.1 served as another indirect

9   way to deny Federal Candidates for a Major Political Party who seek Ballot Access

10   for the ***Primary Ballot***. Appellant further explained that NCGS 163-107.1 was

11   intended to act as an indirect method of denying Ballot Access for federal

12   candidates because in the last election (2022 midterms) 2 candidates who paid the

13   filing fee got less than 1,000 votes; whereas when Appellant who is unable to pay

14   the fee, has to get, at the least, 6,500 signatures [JA197-199]. Appellant argued that

15   this would be burdensome [JA187-189]. Appellant is either to pay the fee or obtain

16   signatures in approximately 6-8 times the amount of votes received by candidates

17   who decided to pay the fee.

18         The District Court said that Appellant was comparing "Apples to Oranges"

19   *Buscemi v. Bell*, 964 F .3d 252, 265 (4th Cir. 2020). *See* [JA23]. Appellant

20   disagrees because as it pertains to federal office NCGS 163-107 and NCGS 163-

1    107.1 [38C-39C] deny ballot access for federal office for those who cannot comply

2    – the comparisons of those 2 statutes are wholly appropriate in regard to

3    qualifications for Federal Office, as **they are derivatives of each other**, and not

4    "comparing Apples to Oranges." Appellant is challenging the payment in lieu of

5    the filing fee requirement [NCGS 163-107.1] regarding his ability to seek Ballot

6    Access : whereas in *Buscemi* those litigants were complaining that the percentage

7    of votes needed to seek ballot access were higher than applying for a new political

8    party; this Court said "The attempt to form a new political party and the act of

9    seeking office as an unaffiliated candidate 'are entirely different' endeavors"

10   *Buscemi v. Bell*, 964 F .3d at 265 and ruled that those litigants were seeking to

11   compare "apples to oranges." *Id supra*. It is for this reason why Appellant believes

12   the District Court came to the wrong conclusion and should have instead viewed

13   Appellant's challenge to NCGS 163-107, 107.1 under the Strict Scrutiny

14   requirement since they are derivatives of each other.

15        To satisfy strict scrutiny, the government must establish three elements: (1)

16   "the interests the government proffers in support" of the statute must be "properly

17   characterized as `compelling'"; (2) the statute must "effectively advance[] those

18   interests"; and (3) the statute must be "narrowly tailored to advance the compelling

19   interests asserted." *Blount v. SEC*, 61 F.3d 938, 943. Appellant believes Appellees

20   fail to satisfy the 1st Prong because there can be no explanation why one who is

31

1    unable to pay the filing fee has to obtain, at the very least, 6,500 signatures

2    whereas candidates who pay the fee are afforded ballot access and can even receive

3    no votes. It is for this reasoning why Appellant believes Appellees cannot

4    effectively advance those interests as it pertains to federal office and, thus, fail the

5    2nd Prong. Subsequently Appellees fail to satisfy the 3rd Prong because NCGS 163-

6    107, 107.1 cannot be narrowly tailored.

7        The District Court's ruling on 30th October 2023 would only give Appellant

8    until 20th November 2023 to obtain, at the very least, 6500 signatures – this would

9    be impossible to comply with since the new congressional maps were enacted on

10    25th October 2023[12]. *See* NCGS 163-107.1(c). The timing of the District Court's

11    ruling as well as the new congressional maps puts Appellant in an unfortunate

12    situation. See *Anderson v. Celebrezze*, 460 U.S. 780 (1983). NCGS 163-107.1

13    severely burdens candidates who are indigent to gain a modicum of support even

14    before the Candidacy Filing Period begins on 4th December 2023[13].

15    Appellant believes the District Court's ruling as to NCGS 163-107, 107.1 should

16       be reversed [JA23-25]. Appellant must also iterate that this challenge to NCGS

17    163-107, 107.1 is not a facial challenge but as applied only to Appellant's desire to

18                        seek ballot access for Federal Congress.

---

[12] https://www.ncleg.gov/BillLookUp/2023/S757
[13] https://www.ncsbe.gov/candidates/running-office

1    **4.) REVEALING APPELLANT'S RESIDENTIAL ADDRESS CHILLS**

2    **APPELLANT'S 1ˢᵗ, 14ᵗʰ AMENDMENT TO SEEK FEDERAL OFFICE**

3    *Standard of Review*:

4           "A finding of a substantial 'chill' on protected first amendment rights

5    requires a showing that the statutory scheme will result in threats, harassment, or

6    reprisals to specific individuals." *Master Printers of Am. v. Donovan*, 751 F.2d

7    700, 704 (4th Cir. 1984) (citations omitted). See also See also *Greidinger v. Davis*,

8    988 F.2d 1344 (4th Cir. 1993).

9           [T]he fact that no direct restraint or punishment is imposed upon

10   speech . . . does not determine the free speech question." *American*

11   *Communications Assn. v. Douds*, 339 U.S. 382, 402 (1950).

12          *American Constitutional Law Found. v. Meyer*, 120 F.3d 1092, 1104-

13   05 (10ᵗʰ Cir. 1997); *Buckley v. American Constitutional Law Foundation, Inc.*, 525

14   U.S. 182, 201-05 (1999) controls the matter as to Section 3 of the Candidacy Form

15   [36C] and Strict Scrutiny applies. *Talley v. California*, 362 U.S. 60, 66 (1960)

16   controls this matter regarding NCGS 163-82.10(c) and both Strict Scrutiny and

17   Exacting Scrutiny applies. See also *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct.

18   2373 (2021).

19          To satisfy strict scrutiny, the government must establish three elements:

20   (1) "the interests the government proffers in support" of the statute must be

33

1    "properly characterized as `compelling'"; (2) the statute must "effectively

2    advance[] those interests"; and (3) the statute must be "narrowly tailored to

3    advance the compelling interests asserted." *Blount v. SEC*, 61 F.3d 938, 943.

4    *Argument*:

5        NCGS 163-82.10(c)[14] [40C-41C] and Section 3 of the Candidacy Form

6    [36C-37C] reveal the candidates residential address. Appellant believes these

7    statutes chill his 1st, 14th, Amendment Rights to seek office. Appellant has shown

8    substantial harm, violence and threats that come to candidates at their homes [2D-

9    26D]. Appellant has shown that violence had come to a Congressional Candidate

10   in North Carolina just last year in 2022 [7D-8D] – how this perpetrator obtained a

11   congressional candidates address was through the NC Voter system[15]. Gov. Phil

12   Murphy of New Jersey signed into law a bill named Daniel's Law in regard to a

13   criminal who killed U.S. District Court Judge Esther Salas' son[16] - this law

14   shielded the addresses of public officials because it is believed that the perpetrator

15   who killed Daniel Salas obtained the address via public record. What Appellant is

16   getting at is that the display of his residential address via NCGS 163-82.10(c) and

17   NCGS 132-1 [40C-42C] can subject Appellant to harm, reprisal, etc.

---

[14] Since being a Registered Voter is a requisite for Federal Office NCGS 163-82.10(c) reveals the residential address of the voter.
[15] https://vt.ncsbe.gov/reglkup/
[16] https://www.nj.gov/governor/news/news/562020/20201120b.shtml

1    Appellees provided no legislative history nor showed any importance,

2    state interest, as to [40C-42C]. Appellees pivoted away from Appellant's claim that

3    NCGS 163-82.10(c) and NCGS 132-1 chilled his 1st, 14th Amendment rights to

4    seek office. *See* [JA146] (Appellees noting that there was a chilling effect).

5    Appellant believed he sufficiently showed NCGS 163-82.10(c) and NCGS 132-1

6    chilled his 1st, 14th Amendment rights to seek office in his Complaint [JA68-69]

7    because he showed a history of violence against candidates in the past and included

8    it in the Appendix he provided in his Complaint for Declaratory Relief[17]. In the

9    event Appellant did not sufficiently allege a violation of NCGS 163-82.10(c) and

10    NCGS 132-1, he did so in his Response [JA158-199] to Appellee's Motion to

11    Dismiss [JA145-146]. Appellees responded [JA210-216] and **didn't even contest**

12    Appellant's response. What Appellant is getting at is that Appellees had the

13    opportunity to rebut Appellant's claim by showing how NCGS 163-82.10(c) and

14    NCGS 132-1 [40C-42C] are substantial state interests but they chose not to. "More

15    recently we have said that state action impinging on free speech and association

16    will not be sustained unless the governmental interest asserted to support such

17    impingement is compelling." *Talley v. California*, 362 U.S. 60, 66 (1960).

---

[17] It should be noted that Appendix Part 2 is an exact replica of the Appendix Appellant provided in support of his Complaint for Declaratory relief –Even on [JA68] Appellant mentions [2D-26D] which is an exact replica of Appendix Part 2.

1    There was a 3-Pronged Test in *Greidinger v. Davis*, 988 F.2d 1344,

2    1352 which seems to follow the 3-Pronged Test in *Blount v. SEC*, 61 F.3d 938,

3    943. (1) "the interests the government proffers in support" of the statute must be

4    "properly characterized as `compelling'"; (2) the statute must "effectively

5    advance[] those interests"; and (3) the statute must be "narrowly tailored to

6    advance the compelling interests asserted." *Blount v. SEC*, 61 F.3d 938, 943.

7    Appellees have provided no support of a governmental interest in

8    NCGS 163-82.10(c) and NCGS 132-1 [40C-42C] and cannot satisfy the 1st prong

9    of *Greidinger/ Blount*. "By allowing the [Appellant's Residential Address] to be

10    disseminated to registered voters or political parties [on a statewide database],

11    [North Carolina's] voter registration scheme conditions the right to vote on the

12    consent to the public disclosure of a [voter's residential address]." *Greidinger v.*

13    *Davis*, 988 F.2d 1344, 1352 (4th Cir. 1993). For the 2nd Prong, giving the benefit to

14    Appellees, Appellant believes Appellees will maintain that NCGS 163-82.10(c),

15    NCGS 132-1 is to prevent voter fraud[18]. Assuming *arguendo* that NCGS 163-

16    82.10(c) and NCGS 132-1 is to prevent voter fraud we move on to the 3rd Prong in

17    determining whether the statutes actually achieve that interest : Appellant believes

---

[18] In Appellee's response to Appellant's complaint they do not specifically mention voter fraud anywhere in their brief, but instead say "any burden on potential candidates caused by publicizing on the internet information that is already public, is minimum at best, and overwhelmingly outweighed by many of the compelling interests discussed *supra*." [JA146]. It is not known what *supra* refers to but the only rational explanation is that it can be to prevent voter fraud. Appellees previous assertions of "compelling state interests" regarded NCGS 163-106(e) as intended to make the electorate "informed" [JA142] and regarded NCGS 163-107.1 to avoid voter confusion [JA144] – if these assertions were to be applied to revealing voters' addresses they would fail as a compelling interest.

1    it does not. Appellees intention to prevent voter fraud can very well be done by

2    keeping NCGS 163-82.10(c)'s database system away from the public and kept in

3    an internal system. The reason being is that if one is on the voter registration

4    records then that person has been cleared to vote; it is hardly the case where a voter

5    finds out if someone who is not allowed to vote in a particular area, due to not

6    living in the particular district. "Thus, to the extent NCGS 163-82.10(c) and NCGS

7    132-1 allow [North Carolina's] voter registration scheme to 'sweep broader than

8    necessary to advance electoral order,' it creates an intolerable burden on

9    [Appellant's] fundamental right to vote and seek office.

10            Appellant believes the District Court did not properly construe

11   Appellant's claim and that its ruling conflicts with the holding of *American*

12   *Constitutional Law Found. v. Meyer*, 120 F.3d 1092, 1104-05 (10th Cir. 1997);

13   *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 201-05

14   (1999); *Talley v. California*, 362 U.S. 60, 66 (1960). [JA25-26]. The District Court

15   seems to believe that once a matter is public record then it is constitutional but

16   Appellant has to disagree based on the progeny of *NAACP v. Alabama ex rel.*

17   *Patterson* , 357 U.S. 449, 462.; *Bates v. Little Rock*, 361 U.S. 516 (1960);

18   *Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993) especially when Appellant has

19   shown past harm to candidates who seek office [2D-26D]. "In other words,

20   [Appellant's] fundamental right to vote is substantially burdened to the extent the

37

1    statutes at issue permit the public disclosure of his [residential address]."

2    *Greidinger v. Davis*, 988 F.2d 1354 (4th Cir. 1993).

3              All cases cited by the District Court are inapposite to Appellant's

4    scenario as the litigants in those cases never challenged a statute. *See* [JA25-26].

5    Appellant is challenging the constitutionality of NCGS 163-82.10(c) and NCGS

6    132-1 as applied to running for Federal Office and believes his situation is more

7    akin to *NAACP v. Alabama ex rel. Patterson* , 357 U.S. 449, 462.;  *Bates v. Little*

8    *Rock*, 361 U.S. 516 (1960); *Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993).

9    For the reasons found in *Cooksey v. Futrell*, 721 F.3d 226 (4th Cir. 2013)

10   "Similarly, in *Buckley* the court refused to hold that disclosure provisions of the

11   Federal Election Campaign Act, 2 U.S.C. § 431 (1976), violated first amendment

12   rights of minor parties and independent candidates because 'no appellant in this

13   case has tendered record evidence of the sort proffered in [NAACP v.] Alabama.'

14   424 U.S. at 71." *Master Printers of Am. v. Donovan*, 751 F.2d 700, 704 (4th Cir.

15   1984). Appellant *has* shown reprisal, violence, etc. [2D-26D]. "The reason for

16   those holdings was that identification and fear of reprisal might deter perfectly

17   peaceful discussions of public matters of importance. [NCGS 163-82.10(c), NCGS

18   132-1] is subject to the same infirmity." *Talley v. California*, 362 U.S. 60, 66

19   (1960). The District Court made one slight mention to Appellant's 1st amendment

20   claim in a footnote [JA26] and cited *Griffin v. Dep't of Labor Fed. Credit Union*,

1   912 F.3d 649 (4th Cir. 2019) but Appellant believes this reliance to be incorrect

2   because NCGS 163-82.10(C) only applies to Registered Voters and not all citizens;

3   there is also a casual connection between Appellant and Appellees as they reveal

4   voters' addresses via NCGS 163-82.10(c) and NCGS 132-1 [40C-42C].

5       Appellant believes the District Court's ruling regarding NCGS 163-82.10(c) and

6               NCGS 132-1 [40C-42C] should be reversed [JA25-26].

7                           **RELIEF/CONCLUSION**

8       **WHEREFORE,** Appellant reverently requests this Court to reverse the

9   District Court's Final Judgment and remand for further proceedings.

10

11

12   /Sign/ _Siddhanth Sharr_

13   Siddhanth Sharma *Pro Se*

14

15   /Date/ 11-13-23

16

17

18

19

20

21

22

23

| Siddhanth Sharma |
| Post Office Box 937 |
| Morrisville, NC, 27560 |
| (919) 880-3394 |
| Siddhanthsharma1996@yahoo.com |

## CERTIFICATE OF FILING/SERVICE/WORD COUNT AND PENALTY

## OF PERJURY

I declare under penalty of perjury that the forgoing is true, correct, and complete to

the best of my knowledge.

Appellant certifies, pursuant to FRAP 32(a)(7), that this Informal Brief

is in compliance with the word-count limit and is 9,032 words.

Appellant certifies, pursuant to FRAP 32(a)(5),(a)(6), that this Petition

is typed using 14-Point Times New Roman font and is Double-Spaced.

Appellant also certifies that a copy has been sent to ALL PARTIES via mail/hand

delivery/E-Mail on 13th November 2023.

**Mary Carla Babb**
NC Department of Justice
Post Office Box 629
Raleigh, NC 27602-0629
919-716-6573
Fax: 919-716-0001
E-Mail: mcbabb@ncdoj.gov
**Terrence Steed**
NC Department of Justice
Post Office Box 629
Raleigh, NC 27602-0629
919-716-6567
Fax: 919-716-6761
E-Mail: tsteed@ncdoj.gov

Sign: _Siddhanth Sharma_
Siddhanth Sharma *Pro Se*
Date: 11-13-23